THE HOME INSURANCE COMPANY OF NEW YORK *v.*
WILLIAMS.

4-6111 145 S. W. 2d 743

Opinion delivered December 2, 1940.

*Warner & Warner,* for appellant.

*Paul X. Williams,* for appellee.

MEHAFFY, J. This action was instituted by the appellee, Abe Williams, against the Home Insurance Company of New York, appellant, on July 21, 1939. It was alleged in the complaint that the appellee bought a car from Donathan Bros. Motor Company and had it financed through the Commercial Credit Company; that the appellant insurance company, in consideration of the payment of premium which was paid by the appellee, insured said car against loss or damage by upset or collision to the actual value of the car less $50; that while said insurance was in full force and effect, in June, 1939, the said car was damaged by upset; the value of the car immediately before the wreck was $625; its value immediately after the wreck was $100, making the total loss due to the upset $525, and that after $50 is deducted there remains the damage of $475; that the insurance company, after being notified, made an investigation and took the damaged car into its possession and now has the same; that demand was made upon said company for the return of the car and $475 as damages or for the payment of $575 and leave the car in its possession; that the demand was definitely refused by the company prior to the institution of this action, and appellant retained possession

of said car and now has possession of same. The prayer was for $575.

The appellant filed motion to dismiss alleging that the appellee was not entitled to maintain the action. The motion to dismiss was overruled, and appellant filed answer denying the allegations of the complaint, and pleading the provisions in the policy. The provisions pleaded were as follows:

"This company's liability for loss or damage to the automobile described herein shall not exceed the actual cash value thereof at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated accordingly, with proper deduction for depreciation however caused, and without compensation for loss of use, and shall in no event exceed the limit of liability, if any, nor what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality; such ascertainment or estimate shall be made by the assured and this company, or if they differ, then by appraisal as hereinafter provided."

Appellant further stated that said insurance contract expressly provided that within sixty days after loss or damage for which claim is made, the assured should render to the appellant a statement signed and sworn to stating the place, time and cause of such loss or damage, the interest of the insured and of all others in the property, the sound value thereof, the amount of damage thereto, all encumbrances thereon, and all other insurance, whether valid or not, covering such property. Appellant stated that appellee failed and neglected to make such proof of loss in the manner and form provided and it pleads such failure and omission in defense to his right to recover.

The appellant further stated in its answer that while the policy provided that in no event should the insurance become payable until sixty days after the notice, ascertainment, estimate and verified proof of loss; suit was begun before the expiration of the time mentioned in the policy. This answer was filed January 16,

1940, and on the same day answer was filed by the Commercial Credit Company.

There was a trial and verdict and judgment in favor of appellee, motion for new trial was filed and overruled, and the case is here on appeal.

The appellee testified in substance that he had lived in Logan county all his life and that he purchased in January, 1939, from Donathan Bros. Motor Company, a 1939 V-8 Ford Tudor; that he paid for it $625; it had been used as a demonstrator and after purchasing it he put in a radio, electric horns, new seat covers and three new tires, and that it was in good shape; talked to the insurance company adjuster about the loss and made a demand of the adjuster who handled the loss for the amount he considered due and the adjuster refused to pay the claim; the insurance company took the car to the Sheridan Motor Company of Fort Smith; that the insurance company offered to pay appellee $237; the value of the car after the collision was $100; knew it had been used as a demonstrator when he bought it; did not know how long it had been used and agreed to pay $625 for the car; did not know the price of that model car was $900; traded in his old car and made notes for the difference, amounting to $339; notes were payable $28.25 per month to the Commercial Credit Company; operated the car from January to June 24th, when the wreck occurred and the car was taken to Fort Smith a day or two after the wreck. Witness identified the sworn proof of loss made by him, and introduced it in evidence; paid $625 for the car and ran it six months and in the proof of loss estimated the value at $550. Appellant offered to settle with appellee on the basis of the damage being $237, and appellee declined to take it. Witness identified photographs of the car which were introduced.

At this point was introduced the insurance contract showing that there was a deductible clause of $50, and the policy provided that loss, if any, should be paid to the Commercial Credit Company for the account of all interests. The provisions of the policy above referred to were introduced.

J. E. Wells testified in substance that he was driving appellee's car at the time it was damaged at a speed of about 50 miles an hour; that another car pulled out from the side of the road and hit the right fender and wheel and turned the car over and tore up the top.

Ray Harp testified in substance that he was an automobile dealer and connected with the Chevrolet agency; he did not know the car well enough to know its value before the wreck; after the wreck he was notified and took the car to his place of business, but made no estimate of the value of the car before the wreck or the damage done to it; he estimated that it was worth approximately $150 after the wreck.

John Hampton, F. L. Donathan, and B. F. Donathan testified, but there is practically no dispute about the damage to the car caused by the wreck.

H. W. Waterman, an adjuster, testified that he settled the loss on the car owned by appellee; settled with the Commercial Credit Company for $237.62; figured the cost of repairing the car at $303.62 and from that deducted $16 for depreciation on the tires, leaving $287.62; then deducted $50 from that, leaving a balance of $237.62 which he had paid to the Commercial Credit Company. He also testified that he took proof of loss from the Commercial Credit Company and adjusted the claim with Mr. Stewart, branch manager of the Commercial Credit Company at Fort Smith.

W. W. Crandall testified that he is service manager of the Sheridan Motor Company, is employed to examine automobiles and estimate cost of repairs; that the Abe Williams car was brought to the company's place of business the latter part of June and his estimate of the cost of repairing the automobile and labor was $289.26; had never seen the car prior to the accident.

Charlie Kayser testified that he examined the car at the Sheridan Motor Company's place of business and estimated the total cost of parts and replacements would amount to $156.96 and that the total cost of labor in repairing and painting would be $133. He estimated the total cost would be $289.96.

Ted C. Bell testified that his estimate of the cost of parts and labor would amount to $304.50.

The court treated appellant's motion to dismiss as a motion to make Commercial Credit Company a party, and sustained the motion and the Commercial Credit Company was made a party. The appellant does not abstract his motion for new trial, but the record shows that it was filed.

Appellant argues first that the court erred in refusing to instruct the jury to return a verdict for the appellant, and argues that the exact question was involved in the case of *General Exchange Insurance Company* v. *Norville*, 199 Ark. 115, 132 S. W. 2d 789. In that case the court said that the extent of the damages to the car might well be regarded as undisputed, and that the court should have held that there was not a total loss and should have given an instructed verdict for the insurance company. The court further said: "Appellee predicated his claim for damages on his allegation that the car was damaged to such an extent that it could not be repaired and restored to its condition at the time of the accident. He refused to accept any amount except the value of the car in money at the time of the accident on his theory that it was a total loss under the terms of the policy."

There is no such question involved in this case. The appellee purchased this car for $625. The undisputed proof shows that it was worth that amount. The contract with appellee shows that he was the purchaser, that the notes were transferred to the Commercial Credit Company, and that appellee had paid all except $113. The appellee certainly had a right to sue. He had the entire interest except the $113, and the insurance policy was made for his benefit as well as the benefit of the Commercial Credit Company.

Section 1305 of Pope's Digest provides: "Every action must be prosecuted in the name of the real party in interest, except as provided in §§ 1307, 1309, and 1310."

No one would contend under the facts in this case that the appellee was not a real party in interest. Moreover, the court treated appellant's motion to dismiss as a motion to make the Commercial Credit Company a party, and it was made a party. The answer of the Commercial Credit Company was filed by the attorneys for the insurance company. The answer specifically states that the appellee executed and delivered his note to the order of Donathan Bros. Motor Company, agreeing to pay said company at the office of the Commercial Credit Company $28.25 each month until the note was paid; that said note was transferred and assigned to the Commercial Credit Company and that the balance due on the note was $113; that on December 28, 1939, the insurance company paid to the Commercial Credit Company $237.62, the same being the amount it would cost to repair or replace the automobile; that the Commercial Credit Company applied $113 to the payment of the remaining installments due on the note, leaving a balance of $124.62 which amount it offered to pay to the appellee in full settlement.

In the instant case the appellee did not claim that there was a total loss or that the automobile could not be repaired. He claimed that at the time of the accident the automobile was worth $625, and that it was worth $100 after the accident. There was substantial evidence to support this contention of the appellee, and the jury returned a verdict for $500. The court deducted from that amount $50 which was deductible under the contract, and also deducted $113 which was due the Commercial Credit Company.

The appellant, however, contends that the liability should in no event exceed what it would then cost to repair or replace the automobile parts with other of like kind and quality.

The court, at the request of appellant, gave to the jury the following instructions:

"2. You are instructed that the insurance policy sued on by the plaintiff provides that loss thereunder, if any, shall be paid to the Commercial Credit Company

for the account of all interests, and if you find from the testimony that the defendant insurance company, has paid to said Commercial Credit Company the amount it was required to pay under the terms of the policy, then your verdict must be for the defendant.

"3. You are instructed that the plaintiff was not entitled to abandon said automobile after the loss, if any, occurred, but that it was his duty to repair or cause to be repaired within a reasonable time thereafter.

"4. The court further instructs you that it is not alleged by the plaintiff that his said automobile was totally destroyed and that it is admitted that the damage occasioned by the upset could be repaired.

"5. The court instructs you that the policy of insurance sued on provides that defendant's liability for loss or damage to the plaintiff's automobile shall not exceed what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality, and that by the terms of said contract, the plaintiff is entitled to recover only the cost of repairing or replacing said automobile at the time the loss was sustained.

"6. The court instructs you that the burden is on the plaintiff to prove all of the material allegations of his complaint by a preponderance of the testimony, and if he fails to do so, then he would not be entitled to recover, and your verdict should be for the defendant."

It is true that there was some evidence that the automobile could be repaired for less than the appellee claimed, but the jury heard the witnesses testify, saw them and had an opportunity to observe their manner on the witness stand, and they were the sole and exclusive judges of the credibility of the witnesses and the weight to be given their testimony. As we have said, the undisputed evidence shows that before the damage to the automobile it was worth $625, and some witnesses testified that after the accident it was worth only $100. These questions were properly submitted to the jury, and its verdict is conclusive. The jury had a right to con-

clude from the evidence that it would cost to repair the automobile the amount it found.

There was a provision in the policy that the loss shall in no event become payable until 60 days after the notice, ascertainment, estimate and verified proof of loss therein required have been received by the insurance company. The appellant contends that this provision was not waived and that the action was prematurely begun and should therefore be dismissed. The evidence shows that after the accident demand was made for payment and it was refused. The witness for appellant testified that he was the adjuster; that he refused payment to the appellee and settled the loss with the Commercial Credit Company. It is true that the policy provides for payment through the Commercial Credit Company, but the contract also provides that the ascertainment of the amount of damages shall be made by the insured and the insurance company, or if they differ, then by appraisal as provided in the policy. The evidence shows that after the accident the appellee made demand, that the appellant denied liability, contended that appellee had no right to sue, took charge of the car, and still had it at the time of the trial.

This provision in the contract that no suit shall be begun until 60 days after proof of loss was made for the benefit of the insurance company, and any provision in an insurance policy made for the benefit of insurer may be waived by the insurer. *Ætna Life Ins. Co.* v. *Duncan,* 165 Ark. 395, 264 S. W. 835.

This court said in the case of *Fire Association of Philadelphia* v. *Bonds,* 171 Ark. 1066, 287 S. W. 587: ''Upon the proposition that the suit was prematurely brought, it may be said that, before the expiration of the sixty days allowed the company in which to determine whether it would pay the policy or not, the conclusion was announced that it would pay only one-half the policy, and this position appellant has since consistently maintained. The suit was therefore not brought prematurely. The refusal of the appellant to pay the face of the policy was in effect a denial of liability, and, when that posi-

tion was announced, the right to sue accrued, even though the sixty days had not then expired.'' There is a long line of cases to the same effect as the case above cited.

The appellant does not claim that the automobile was not damaged, and not damaged more than the amount appellee owed the Commercial Credit Company. What it does contend, however, is that the mechanics' evidence was to the effect that it could be repaired for less than claimed by the appellee, and that the evidence is not sufficient to sustain the verdict for the amount. The evidence that it was worth a certain amount before the accident and worth a certain less amount after the accident is substantial evidence tending to show what it would cost to repair the automobile.

In the case of *Madison-Smith Cadillac Co.* v. *Wallace,* 181 Ark. 715, 27 S. W. 2d 524, this court said: ''Upon the question of the measure of damages the court gave over appellant's objection an instruction numbered 4, which reads as follows: 'You are instructed that, if you find for the plaintiff, you may fix his damages at such a sum as will fairly compensate him for the damages sustained to his automobile, if any, and in that connection you are instructed that the plaintiff, if you find for him, will be entitled to recover the difference between the value of his automobile before the injury and the value of his automobile after the injury *and damages to it, if any.'* '' *Sutton* v. *Webb,* 183 Ark. 865, 39 S. W. 2d 314.

The appellee did not contend that the Commercial Credit Company was not entitled to $113, and did not contend that there was not $50 deductible, but he was only contending that he had a right to recover the difference between these amounts and the amount of damage to his automobile. That is what he did recover, and no more.

The policy having been issued, the damage to the automobile having occurred, appellee was absolutely entitled to recover the amount of damages to his automobile less the $50 deductible and the $113 due the Commercial Credit Company.

This court has repeatedly held that where the judgment is right upon the whole case, there will not be a reversal, although error appears in the record. A judgment will be reversed by this court only for prejudicial error. *Coburn* v. *Gilbert,* 165 Ark. 155, 263 S. W. 383; *Dunn* v. *Turner Hdw. Co.,* 166 Ark. 520, 266 S. W. 954; *Church* v. *Jones,* 167 Ark. 326, 268 S. W. 7; *Texas Pipe Line Co.* v. *Johnson,* 169 Ark. 235, 275 S. W. 329.

We think the record here clearly shows that the judgment was correct, and it is, therefore, affirmed.

The Chief Justice and Mr. Justice McHaney dissent.